IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**SHERWIN WILLIAMS COMPANY,**

Plaintiff,

**v.**

**COURTESY OLDSMOBILE-CADILLAC, INC.,**

Defendant.

1:15-cv-01137 MJS HC

**ORDER REGARDING SECOND REQUEST TO SEAL DOCUMENTS**

(Doc. 30)

## I. INTRODUCTION

Presently before the Court is Plaintiff Sherwin Williams Company's second request to seal documents. (See ECF No. 30.) Plaintiff seeks to seal a "Supply Agreement" that it intends to use as an exhibit in a forthcoming motion to strike or dismiss affirmative defenses.

On December 10, 2015, Plaintiff filed a first request to seal the Supply Agreement. Plaintiff provided no detail as to why the Supply Agreement is confidential and why its contents should be considered trade secrets in the first request. On December 14, 2015, the Court denied the request to seal without prejudice, and provided Plaintiff fourteen (14) days to file a renewed request to seal.

On December 22, 2015, Plaintiff filed a second request to seal. (ECF No. 30.) In

the second request, Plaintiff asserts that the Supply Agreement contains confidential information that it is treating as a trade secret and that the parties have agreed to keep the agreement confidential.

On December 28, 2015, Defendants filed an opposition to the request by submitting an electronic copy to the judge's proposed order e-mail box, as required by Local Rule 141(c).[1] Although not authorized under Rule 141, Plaintiff filed a reply to the opposition on December 30, 2015. Plaintiff attached a copy of a declaration of Vincent R. Caruso, Director of Finance of the Automotive Division of Plaintiff, with the reply. Even if not properly authorized under the local rule, for the sake of completeness, the Court will consider the arguments and evidence submitted with the reply.

## II. FACTUAL BACKGROUND

In the complaint filed on July 22, 2015, Plaintiff alleges that Defendants breached the terms of Supply Agreement contract and are required to repay an $175,000 advance along with other damages. (Compl., ECF No. 1.) Plaintiffs state: "Pursuant to the Supply Agreement, [Defendants] agreed to exclusively use Sherwin-Williams automotive paint and coating products from April 20, 2011 ("Effective Date") until the date upon which net sales, as defined by the Supply Agreement, equal Nine Hundred Thousand and 00/100 Dollars ($900,000.00) (the "Term")." (Id. at ¶ 6.) "[I]n the Supply Agreement, Sherwin-Williams agreed, among other promises, to provide a prepaid discount to [Defendants] in the amount of One Hundred Seventy Five Thousand and 00/100 Dollars ($175,000.00) (the "Advance")." (Id. at ¶ 7.) Finally, "In consideration for [Defendant]'s obligations under the Supply Agreement, Sherwin-Williams agreed to, and in fact did, provide Courtesy paint products at a 15% discount off of the refinisher price list of Sherwin-Williams." (Id. at ¶ 9.)

Defendants started purchasing products from Plaintiff in April 2011, and ceased purchasing products around March of 2012, constituting a breach of the agreement and

[1] Accordingly, there is no copy of the opposition placed on the District's Electronic Case Filing ("ECF") database.

triggering the right for acceleration for repayment of the advance. (Id. at ¶¶ 13-17.) Defendants have not repaid the advance. (Id.)

Plaintiff explains the materials contained in the Supply Agreement provide “a competitive advantage to Sherwin-Williams in the marketplace” because the standard terms, conditions, relationships, and incentives contained in the agreement could be mimicked by competitors. (ECF No. 30 at 3.) Specifically, it claims competitors will be better able to discern Plaintiff’s pricing, including the details of the advance provided, and the conditions triggering repayment of the advance. (Id.)

## III. LEGAL STANDARD

Local Rule 141(a) provides that "[d]ocuments may be sealed only by written order of the Court, upon the showing required by applicable law." The request to seal "shall set forth the statutory or other authority for sealing, the requested duration, the identity, by name or category, of persons to be permitted access to the documents, and all other relevant information." Id. 141(b).

Courts have long recognized a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (denying release of the "Nixon tapes" that were played in open court and entered into evidence). "This right extends to pretrial documents filed in civil cases." Estate of Migliaccio v. Allianz Life Ins. Co. (In re Midlan Nat'l Life Ins. Co. Annuity Sales Practices Lit.), 686 F.3d 1115, 1119 (9th Cir. 2012) (per curiam). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the historical right of access and the public policies favoring disclosure. See id. at 1178-79.

The Ninth Circuit has determined that the public's interest in non-dispositive motions is relatively lower than its interest in trial or a dispositive motion. Accordingly, a

party seeking to seal a document attached to a non-dispositive motion need only demonstrate "good cause" to justify sealing. Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good cause" standard to all non-dispositive motions because such motions "are often unrelated, or only tangentially related, to the underlying cause of action"). "The party seeking protection bears the burden of showing specific prejudice or harm will result if no [protection] is granted." Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). That party must make a "*particularized showing* of good cause with respect to any individual document." San Jose Mercury News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose), 187 F.3d 1096, 1103 (9th Cir. 1999) (emphasis added). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir.) (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986)), cert. denied, 506 U.S. 868, 113 S. Ct. 197, 121 L. Ed. 2d 140 (1992).

## IV. DISCUSSION

Plaintiff requests its Supply Agreement be sealed as a trade secret and as confidential business information. Not all business information is so confidential or sensitive that it must be sealed. See, e.g., Open Text S.A. v. Box, Inc., No. 13-04910, 2014 U.S. Dist. LEXIS 177484, 2014 WL 7368594, at *3 (N.D. Cal. Dec. 26, 2014) (declining to seal, for example, information about a litigant's "product design and source code and highly confidential and competitively sensitive business information including usage data," even though the litigant argued the information was "likely to cause harm to [its] business if known by competitors"); GoDaddy.com LLC v. RPost Commc'ns Ltd., No. 14-00126, 2014 U.S. Dist. LEXIS 69733, 2014 WL 2117349, at *1 (D. Ariz. May 21, 2014) ("[A] party's allegations that material is 'confidential' or 'business information' are insufficient to justify sealing court records containing such material unless the party proves the existence of compelling reasons such as those set forth in Kamakana. . . . "[O]nly in extremely limited circumstances will confidential information actually merit the sealing of court records." (citations omitted)). Trade secrets, specific pricing terms,

royalty rates, and similar data are more commonly sealed. See, e.g., In re Elec. Arts, Inc., 298 F. App'x 568, 569 (9th Cir. 2008) (unpublished); see also Herron v. Best Buy Stores, LP, No. 12-02103, 2015 U.S. Dist. LEXIS 120865, 2015 WL 5330271, at *2 (E.D. Cal. Sept. 10, 2015) (sealing a defendant's internal valuations of products and brands, developed after expenditure of "great amounts of time and money," which were unavailable to competitors and at the heart of the defendant's business).

Here, Plaintiff explains that the pricing structure of its Supply Agreement including the details of the advance payment would be valuable to its competitors. As pointed out by Defendants, Plaintiffs have already publically disclosed the material financial terms of the Supply Agreement in the complaint. Accordingly, there is no reason to consider the financial terms as trade secrets or as a basis for sealing. Plaintiff also claims that the Supply Agreement is kept confidential, that effort has been spent by Plaintiff to draft terms of the agreement, and competitors could benefit by mimicking the language if it was disclosed.

The Court appreciates Plaintiff's competitive marketplace in the automotive paint industry, but Plaintiff has publically disclosed the financial terms that possibly could have served as the basis for trade secret protection. See, In re Elec. Arts, Inc., 298 F. App'x 569 (9th Cir. 2008) (Trade secrets can include specific pricing terms, royalty rates, and similar data.) "Public disclosure… is fatal to the existence of a trade secret." Apple Inc. v. Psystar Corp., 2012 U.S. Dist. LEXIS 148, 3-4 (N.D. Cal. Jan. 3, 2012) (citing In re Providian Credit Card Cases, 96 Cal. App. 4th 292, 304, 116 Cal. Rptr. 2d 833 (2002)).

Plaintiff also requests to seal the Supply Agreement because Plaintiff has invested substantial resources in drafting and updating the Supply Agreement. However, the Court notes that the Agreement is short (two and one half pages) and contains what appear to be fairly standard contractual terms. To the extent that any of the other terms of the agreement are proprietary and subject to trade secret protection, Plaintiff has not presented any argument. Finally, even if a competitor could obtain some benefit from copying the terms of the Agreement, the public interest in understanding this litigation

outweighs the need to protect the terms of Plaintiff's Supply Agreement from public scrutiny.

## V. CONCLUSION

The second request to seal the Supply Agreement is DENIED with prejudice.

IT IS SO ORDERED.

Dated: January 5, 2016

/s/ Michael J. Seng
UNITED STATES MAGISTRATE JUDGE